Jeffrey A. WILKINS a/k/a Jeffery
A. Wilkins and Karen Y.
Wilkins, Plaintiffs,

v.

WELLS FARGO BANK, N.A.,
and Samuel I. White,
P.C., Defendants.

Civil No. 2:15cv566

United States District Court,
E.D. Virginia.

Filed 03/08/2017

Henry W. McLaughlin, III Drew D. Sarrett, Attorney for Plaintiffs.

Christy L. Murphy, Attorney for Defendants.

## OPINION AND ORDER

Mark S. Davis, UNITED STATES DISTRICT JUDGE

This matter is before the Court on a motion for leave to file a second amended complaint, submitted by Plaintiffs, Jeffrey A. Wilkins and Karen Y. Wilkins (collectively, "Plaintiffs" or "the Wilkinses"). ECF No. 43. Such motion is opposed by defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Samuel I. White, P.C. ("White," and collectively with Wells Fargo, "Defendants"). ECF No. 45. For the reasons set forth below, the motion for leave to file a second amended complaint is **GRANTED**.

### I.  Factual and Procedural Background

The instant case arises from a mortgage loan, completed on March 8, 2006 between American Home Mortgage and the Wilkinses, for purchase of a home in Chesapeake, Virginia. Am. Compl. ¶ 7. The loan was evidenced by a promissory note and secured by a Deed of Trust. Id. A VA Guaranteed Loan and Assumption Policy Rider ("VA Rider") was attached to the Deed of Trust. Ex. A, VA Rider 1, ECF No. 1-1. On March 5, 2013, Plaintiffs initially asked the Chesapeake Circuit Court to enjoin a foreclosure sale based upon alleged violations of a consent judgment to which the Plaintiffs were not parties. Compl., Wilkins v. Wells Fargo Bank NA, CL13000588-00 (Chesapeake Cir. Ct. Mar. 5, 2013); see Def.'s Resp. Br. 1-2, ECF No. 45. Defendants filed a demurrer to that complaint. Demurrer, Wilkins v. Wells Fargo Bank NA, CL13000588-00 (Chesapeake Cir. Ct. June 11, 2013). Plaintiffs then nonsuited that action. Nonsuit Order, Wilkins v. Wells Fargo Bank NA, CL13000588-00 (Chesapeake Cir. Ct. July 2, 2013). On November 4, 2014, the foreclosure sale occurred. Am. Compl. ¶ 25.

Plaintiffs filed a complaint in this Court on December 31, 2015, alleging a breach of the Deed of Trust "Applicable Law" Provision and a breach of the implied covenant of good faith and fair dealing. ECF No. 1. On February 5, 2016, Defendants filed a motion to dismiss Plaintiffs' complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 3. On May 9, 2016, the Court granted Defendants' motion to dismiss without prejudice to Plaintiffs' right to file a motion seeking leave to file an amended complaint. ECF No. 17. The Court granted Plaintiffs leave to file an amended complaint on June 6, 2016. ECF No. 24. The amended complaint alleged a single breach of contract claim based upon language within the VA Rider to the Deed of Trust. ECF No. 32. On June 29, 2016, Defendants filed a second motion to dismiss based upon Rule 12(b)(6), ECF No. 25, which the Court denied on November 15, 2016, ECF No. 33. Defendants filed a counterclaim against Plaintiffs on January 4, 2017. ECF No. 39.

On February 1, 2017, Plaintiffs filed a motion requesting leave to file a second amended complaint. ECF No. 43. Plaintiffs request leave to amend their complaint after receiving a copy of a letter purportedly sent from Defendants to Plaintiffs on July 17, 2014, which denied Plaintiffs' pending loan modification. 2d Am. Compl. ¶ 20, ECF No. 43-1. The Plaintiffs do not recall receiving such a letter, id. ¶ 21, however, they seek leave to amend their complaint to add additional facts regarding Plaintiffs' conversations with Defendants regarding loan modification and regarding the documents that Plaintiffs sent to Defendants in support of Plaintiffs' last application for a loan modification, id. ¶ 21-26. According to the second amended complaint, Plaintiffs called Defendants on October 28, 2014, one week prior to the home foreclosure sale scheduled for November 4, 2014, to re-

quest a loan modification in order to stop the scheduled foreclosure. Id. ¶ 21. Over the following week, Plaintiffs faxed documents to Defendants, spoke with Defendants on the phone regarding the status of the loan modification application and were informed that additional documents were needed, faxed additional documents, and spoke with Defendants on the phone on November 1, 2014 to confirm that all necessary documents had been received. Id. Without sending Plaintiffs a written denial of the loan modification application, Defendants foreclosed on Plaintiffs' home on November 4, 2014. Id. Plaintiffs seek leave to amend their complaint to allege these additional facts. Defendants oppose the motion on the basis that: (1) amendment would prejudice the Defendants, (2) Plaintiffs acted in bad faith, and (3) the amendment is futile. ECF No. 45. Plaintiffs chose not to file a reply brief to respond to Defendants' assertions.

## II. Legal Standard

■ It is well-established that leave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). "The Supreme Court has emphasized that 'this mandate is to be heeded.'" Johnson v. Oroweat Foods Co., 785 F.2d 503, 509–10 (4th Cir. 1986) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Leave to amend should be freely given "unless 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Steinburg v. Chesterfield Cnty. Planning Comm'n, 527 F.3d 377, 390 (4th Cir. 2008) (quoting Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006)); see Foman, 371 U.S. at 182, 83 S.Ct. 227 (noting that leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

■ While "delay alone is not [a] sufficient reason to deny leave to amend," when a proposed amended pleading "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party," it may be prejudicial. Johnson, 785 F.2d at 509–10. The "basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." Id. at 510. Bad faith includes seeking to amend a complaint for an improper purpose, Peamon v. Verizon Corp., 581 Fed.Appx. 291, 292 (4th Cir. 2014) (holding that it was bad faith to seek to amend complaint in order to "artificially inflate ... damages in order to obtain subject matter jurisdiction"), or seeking leave to amend after repeated "pleading failures," U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013) (holding that the district court did not abuse its discretion in denying plaintiff leave to file a fourth amended complaint after repeated prior dismissals for failure to sufficiently plead his claim).

■ With respect to the determination of whether amendment would be futile, the United States Court of Appeals for the Fourth Circuit has stated that an amendment is futile when it "is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510. It was recently observed by another federal district court in Virginia that "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Blick v. Shapiro & Brown, LLP, No. 3:16-CV-00070, 2017 WL 58864, at *3 (W.D. Va. Jan. 5, 2017). Therefore, a court should deny a motion to amend a complaint as futile if it is apparent that "the proposed amendments could not withstand a motion to dismiss." Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted).

## III. Discussion

### A. Prejudice and Bad Faith

■ Defendants essentially argue that Plaintiffs' dilatory actions constitute bad faith

and that it would be prejudicial to Defendants for the Court to grant leave to amend. Defendants assert that Plaintiffs have already had three separate opportunities to state their claims against Defendants and have repeatedly changed their arguments, costing Defendants substantial amounts of money to defend against an ever-changing claim, Defs.' Resp. Br. 4. According to Defendants, without identifying any facts that were previously unknown, Plaintiffs are once more attempting to change their pleading, which at this point constitutes an act of bad faith.

Plaintiffs seek to amend their complaint after receiving a copy of a letter that Defendants purportedly sent to Plaintiffs on July 17, 2014 that denied Plaintiffs' pending loan modification. 2d Am. Compl. ¶ 20. Plaintiffs now seek to add facts to their complaint regarding correspondence between Plaintiffs and Defendants in the week prior to foreclosure. According to Plaintiffs, even if the July 17, 2014 letter denied a pending loan modification application, Plaintiffs' correspondence with Defendants between October 28, 2014 and November 4, 2014 constituted a separate loan modification application which prevented Defendants from foreclosing on the home. Id. ¶ 21–26.

While Defendants argue that Plaintiffs have had numerous opportunities to present their case because they have been functionally litigating this case for several years, "delay alone is not [a] sufficient reason to deny leave to amend." Johnson, 785 F.2d at 509–10. Defendants go on to argue that such delay is costly, and thus it would be prejudicial to grant Plaintiffs leave to amend because Defendants would have to respond to new legal theories advanced by Plaintiffs. See id. (noting that an amendment may be prejudicial when it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party"). Defendants allege that Plaintiffs' continued efforts to change their claim also constitute bad faith. However, while Plaintiffs' proposed second amended complaint alleges additional facts in support of their claim, it raises no new legal theories, does not seek to remedy repeated pleading deficiencies, and is not for an improper pur-

pose. See Peamon, 581 Fed.Appx. at 292, Takeda Pharm., 707 F.3d at 461. Instead, Plaintiffs seek permission to add facts in support of the same basic argument that they made in their first amended complaint:

(1) that Defendants had a legal obligation pursuant to the Deed of Trust to create a loan servicing program in accordance with accepted industry standards, Am. Compl. ¶¶ 10–11, (2) that accepted industry standards prevented dual track home loan foreclosure, id. ¶ 19, (3) that Defendants engaged in dual tracking by foreclosing on Plaintiffs' home while a home loan modification was pending, id. ¶¶ 18, 20, 25, and (4) that Plaintiffs suffered harm by losing legal title to their home as well as suffering financial costs associated with the foreclosure, id. ¶ 36.

Nov. 15, 2016 Op. & Order 13, ECF No. 33. Finally, the amendment is offered well in advance of trial, which undermines the possible prejudicial effect to Defendants. Johnson, 785 F.2d at 510 ("[The] basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial.").

In summary, Plaintiffs request leave to amend their complaint in order to add additional facts supporting the same basic legal argument in their existing complaint. The proposed amended complaint raises no new legal theories and is offered well in advance of trial. Accordingly, the Court finds that amendment is in the interest of justice and is not prejudicial or offered in bad faith.

### B. Futility

■ Next, Defendants argue that filing the second amended complaint would be futile because "the Court cannot grant the relief sought by the Plaintiffs in the draft Second Amended Complaint." Defs.' Resp. Br. 7. In order to prevail on their breach of contract claim, Plaintiffs are required to demonstrate that Defendants failed to " 'develop and maintain a loan servicing program which follows accepted industry standards for servicing of similar type conventional loans.' " Nov. 15, 2016 Op. & Order 11–12 (quoting 38 C.F.R. § 36.4346 (2005)). Plaintiffs must plausibly allege (1) that the accepted industry standard prevented dual track

foreclosure,[1] and (2) that Defendants actually engaged in dual track foreclosure. With respect to this second allegation, Plaintiffs must show that Defendants were working with Plaintiffs to avoid foreclosure, such as through a loan modification, while simultaneously proceeding with a foreclosure sale.

Defendants argue that amending the complaint would be futile because, even after adding new information documenting Plaintiffs' phone calls and document submissions in the week preceding the foreclosure sale, the second amended complaint still does not allege sufficient facts to demonstrate that Plaintiffs had a loan modification application pending at the time of foreclosure, and thus fails to demonstrate that the Defendants engaged in dual track foreclosure.[2] Defs.' Resp. Br. 7–8. In support of their argument, Defendants point to the Real Estate Settlement Procedures Act, Regulation X, to identify when a loan modification is considered pending at the point of foreclosure such that it would be considered dual tracking for a loan servicer to proceed with foreclosure. Id. Under Regulation X, a borrower may submit a "loss mitigation application," and servicers must then evaluate the application and determine what options the borrower qualifies for. See generally 12 C.F.R. 1024. The dual track foreclosure prohibition within Regulation X prohibits servicers from foreclosing on a home while a loss mitigation application is pending, but only if the application was received more than thirty-seven days before the scheduled foreclosure sale. 12 C.F.R. § 1024.41(g).[3]

While Defendants appear to implicitly recognize that Regulation X does not necessarily constitute the entirety of the accepted industry standard, Defendants nevertheless ask the Court to apply the Regulation X timelines as the accepted industry standard to determine whether Plaintiffs' second amended complaint states facts sufficient to show that a loan modification was pending at the time of the foreclosure sale. Defs.' Resp. Br. 8 ("Regardless of whether Regulation X provides the accepted industry standard for dual tracking, Wells Fargo is entitled to applicability of the timelines provided in 12 C.F.R. § 1024.41."). By contrast, Plaintiffs allege that Defendants' representative worked with Plaintiffs to submit a loan modification application in the days leading up to the foreclosure sale, something that Defendants were not required to allow under 12 C.F.R. 1024.41(g), but which Defendants allowed based upon internal policies in accordance with accepted industry standards. 2d Am. Compl. ¶ 21–26. Thus, Plaintiffs allege that Defendants allowed Plaintiffs to submit an eleventh hour loan modification, id., that Plaintiffs' loan modification was pending on the day that the foreclosure sale occurred, id. ¶ 26, and that accepted industry standards prohibited foreclosure while a loan modification was pending, id. ¶ 18.

■ Just as when ruling on a Rule 12(b)(6) motion to dismiss, to determine the futility of amending a complaint, the Court must consider the motion without resolving factual disputes, such as what constitutes a pending loan modification according to the accepted industry standard. See Iqbal, 556 U.S. at 696,

---

1. Dual tracking occurs "when the servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." See Consumer Financial Protection Bureau, CFPB Rules Establish Strong Protections For Homeowners Facing Foreclosure 2 (Jan. 17, 2013), http://files.consumerfinance.gov/f/201301_cfpb_servicing-fact-sheet.pdf.

2. Defendants do not concede that dual track foreclosure was prohibited by accepted industry standards, but argue that Defendants could not have engaged in dual track foreclosure in this case because Plaintiffs did not have a loan modification application pending at the time of the foreclosure sale.

3. The dual track foreclosure prohibition is not the only regulation requiring servicers to evaluate a borrower's loan modification application. The commentary on the Final Rules implementing Regulation X clarifies that even when a loan modification is submitted fewer than thirty-seven days before a foreclosure sale, a servicer is still "required separately ... to properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options for which the borrower may be eligible pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan." Final Rules, 78 Fed. Reg. 10696, 10834 (Feb. 14, 2013) (agency commentary to the rules to be codified at 12 C.F.R. pt. 1024), https://www.gpo.gov/fdsys/pkg/FR-2013-02-14/pdf/2013-01248.pdf.

**130**

129 S.Ct. 1937; Nov. 15, 2016 Op. & Order 11–12 (quoting 38 C.F.R. § 36.4346 (2005)). While Defendants argue that Regulation X reflects the accepted industry standard and only prohibits servicers from foreclosing when a borrower has submitted a loan modification application more than thirty-seven days prior to a foreclosure sale, Plaintiffs' proposed second amended complaint fails to articulate any particular industry standard, but does allege that Defendants violated the "accepted industry standard" by allowing Plaintiffs to file a loan modification application in the week prior to foreclosure and subsequently foreclosing without sending a written denial of the loan modification application. Even assuming that dual track foreclosure is prohibited by accepted industry standards, because the Court must consider the motion to amend without resolving factual disputes, the Court does not resolve any factual dispute over how much time prior to foreclosure a borrower must submit a loan modification application in order for it to constitute dual track foreclosure. Without resolving factual disputes, the Court should deny a motion to amend a complaint as futile only if it is apparent that "the proposed amendments could not withstand a motion to dismiss," Perkins, 55 F.3d at 917, because the proposed amended complaint fails to plausibly state a claim, Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Here, as explained above, Plaintiffs' proposed amended complaint plausibly alleges facts that support a claim. Therefore, the Court finds that amendment would not be futile.

### IV. Conclusion

Accordingly, for the reasons stated above, the pending motion for leave to amend is **GRANTED**, ECF No. 43, and the Clerk is **DIRECTED** to file the second amended complaint that was attached to Plaintiffs' motion for leave to amend, ECF No. 43–1.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**